Michael Keane (MK-7655)
John Becker (JB-1093)
Jason Hsi (JH-2968)
GARFUNKEL, WILD & TRAVIS, P.C.
*Attorneys for Plaintiff*
111 Great Neck Road
Great Neck, New York  11021
(516) 393-2200

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ST. JOHN'S UNIVERSITY, NEW YORK,

                   Plaintiff,

   -against-

SANFORD M. BOLTON; HYGROSOL
PHARMACEUTICAL CORP.; and SPIRIDON
SPIREAS,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**COMPLAINT**

**TRIAL BY JURY DEMANDED**

08 Civ. 5039 (NGG)(JMA)

Plaintiff St. John's University, New York, by its attorneys, Garfunkel, Wild & Travis,

P.C., alleges for its complaint against defendants Sanford M. Bolton, Hygrosol Pharmaceutical

Corp., and Spiridon Spireas (collectively, "Defendants"), as follows:

**INTRODUCTION**

1.     St. John's University, New York, is a major national university that actively

encourages the free exchange of ideas and promotes an environment of intellectual vigor and

discovery.  St. John's is the second largest Catholic university in the United States, with five

campuses and more than twenty thousand students from virtually every state in the country.  In

the last year, St. John's received approximately thirty-seven thousand applications for admission, more than any other private university in the State of New York.

2.     The individual defendants in this action include a former St. John's fellow and graduate student, and a former professor and Chairman of St. John's Department of Pharmacology and Administrative Sciences. Regretfully, after developing one or more valuable inventions through the utilization of St. John's facilities, programs, and academic/research environment, the former professor and department chair, together with the former student, fraudulently concealed the invention(s), left St. John's, patented the invention(s), and earned vast fees from commercially licensing the invention(s). These actions violated numerous duties – including contractual and fiduciary duties – to St. John's, which long ago implemented a commonplace academic policy requiring that all patentable inventions or discoveries resulting from University research are the property of the University. St. John's also has a separate revenue sharing policy with respect to such inventions or discoveries. This lawsuit was commenced to seek recompense for, and, to the extent possible, undo this wrongdoing.

## PARTIES

3.     Plaintiff St. John's University, New York ("STJ" or "Plaintiff") is an education corporation formed under the Education Law of the State of New York, with its principal place of business at 8000 Utopia Parkway, Jamaica, New York.

4.     Upon information and belief, defendant Sanford M. Bolton ("Bolton"), is a resident of Arizona, residing at 5495 N. Via Velasquez, Tuscon, Arizona.

5.     Upon information and belief, defendant Spiridon Spireas ("Spireas") is a resident of Pennsylvania, residing at 1536 Pebbletown Drive, New Hope, Pennsylvania.

6.      Upon information and belief, defendant Hygrosol Pharmaceutical Corp. ("Hygrosol"), is a corporation formed under the laws of Delaware, with its principal place of business at 15 Eagleton Farms Road, Newtown, Pennsylvania.

## JURISDICTION AND VENUE

7.      This action was originally brought in the Supreme Court for the State of New York, County of Queens, in which County a substantial part of the events or omissions giving rise to the claims occurred, and in which STJ has its principal place of business.

8.      Defendant Spireas removed the action to this Court on the ground of diversity.

9.      On or about February 9, 2009, Bolton filed a Consent to Removal, consenting to and joining in the removal of the action to this Court.

10.     On or about February 24, 2009, Hygrosol filed a Notice of Joinder in Removal, consenting to and joining in the removal of the action to this Court.

11.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this district, and pursuant to 28 U.S.C. § 1441(a), because this is the district and division embracing the place where the State court action was pending before Spireas removed the action to this Court.

# BACKGROUND

## The STJ Patent Policy

13.     From before 1984 through 1994, the STJ College of Pharmacy and Allied Health Professions had a policy governing the ownership of inventions resulting from research conducted by STJ faculty and students (the "STJ Patent Policy").

14.     Pursuant to the STJ Patent Policy, all patentable inventions, discoveries, processes, uses, products, or combinations resulting, in whole or in part, from any of (a) the use of the laboratories or other facilities of STJ, (b) services rendered by faculty to STJ, (c) research conducted by graduate students or doctoral candidates under the direction of STJ faculty, or (d) any related or predicate research, were required to be assigned to STJ.

15.     From before 1984 through 1994, the STJ Patent Policy was applicable to all faculty members, research/teaching fellows, graduate students, and doctoral students, at the STJ College of Pharmacy and Allied Health Professions.

16.     During all times relevant to this action, all faculty members received notice of the STJ Patent Policy and its provisions.

17.     During all times relevant to this action, all research/teaching fellows, upon acceptance to the STJ College of Pharmacy and Allied Health Professions, received notice of the STJ Patent Policy and its provisions.

18.     The STJ Patent Policy, and its terms and provisions, were accepted and agreed to by Bolton with respect to all research conducted by Bolton in connection with his employment at

STJ, and all work done by Bolton in connection with carrying out his duties as a faculty member at STJ.

19.     The STJ Patent Policy, and its terms and provisions, were accepted and agreed to by Spireas with respect to all research conducted by Spireas in connection with his graduate studies, and his research/teaching fellowship, at STJ.

**Bolton's and Spireas's STJ Based Research Into Liquisolid Systems**

20.     In or about September of 1988, Spireas completed and received a Master's degree from the STJ College of Pharmacy and Allied Health Professions.

21.     From in or about September 1988 through in or about May 1990, Spireas was a paid research/teaching fellow at the STJ College of Pharmacy and Allied Health Professions.

22.     From in or about September 1988 through in or about February 1993, Spireas was a doctoral candidate at the STJ College of Pharmacy and Allied Health Professions.

23.     Bolton was doctoral advisor to Spireas.

24.     Bolton directed Spireas's laboratory dissertation research project (the "Dissertation Research Project").

25.     Bolton directed the Dissertation Research Project as an element of his services to STJ.

26.     Bolton was granted a paid research leave for the Spring 1989 Semester.

27.     In or about February of 1993, Spireas completed his doctorate at the STJ College of Pharmacy and Allied Health Professions.

28.     On or about June 30, 1993.  Bolton's notice of retirement was accepted by STJ. Bolton continued teaching until in or about June of 1994.

29.     On or about January 10, 1996, a patent application entitled "Liquisolid systems and methods of preparing same," identifying Bolton and Spireas as the inventors, was filed with the United States Patent and Trademark Office ("USPTO") as United States Patent Application No. 08/658,514 (the "'514 Patent Application").

30.     On or about October 1, 1997, a patent application entitled "Liquisolid systems and methods of preparing same," identifying Bolton and Spireas as the inventors, was filed with the USPTO as United States Patent Application No. 08/937,240 (the "'240 Patent Application").

31.     On or about August 19, 1998, a patent application entitled "Liquisolid systems and methods of preparing same," identifying Bolton and Spireas as the inventors, was filed with the USPTO as United States Patent Application No. 09/136,035 (the "'035 Patent Application").

32.     On or about May 10, 2000, a patent application entitled "Liquisolid systems and methods of preparing same," identifying Bolton and Spireas as the inventors, was filed with the USPTO as United States Patent Application No. 09/568,475 (the "'475 Patent Application").

33.     On or about September 1, 1998, United States Patent No. 5,800,834 issued on the '514 Patent Application (the "'834 Patent").

34.     On or about October 19, 1999, United States Patent No. 5,968,550 issued on the '240 Patent Application (the "'550 Patent").

35.    On or about August 1, 2000, United States Patent No. 6,096,337 issued on the '035 Patent Application (the "'337 Patent").

36.    On or about July 23, 2002, United States Patent No. 6,423,339 issued on the '475 Patent Application (the "'339 Patent").

37.    One or more of (a) Spireas's use of the laboratories or other facilities of STJ, (b) research related services rendered by Spireas to STJ, (c) research conducted by Spireas under the direction of STJ faculty, (d) the Dissertation Research Project, or (e) related or predicate research conducted by Spireas ((a-e) hereinafter referred to as "Spireas's Research Activities"), resulted, in whole or in part, in the invention(s) that are the subject matter of the '514, '240, '035 and '475 Patent Applications and the '834, '550, '337 and '339 Patents.

38.    One or more of (a) Bolton's use of the laboratories or other facilities of STJ, (b) services rendered by Bolton to STJ, (c) the Dissertation Research Project under Bolton's direction, (d) research conducted by graduate students or doctoral candidates under Bolton's direction, or (e) any related or predicate research conducted or directed by Bolton ((a-e) hereinafter referred to as "Bolton's Research Activities"), resulted, in whole or in part, in the invention(s) that are the subject matter of the '514, '240, '035 and '475 Patent Applications and the '834, '550, '337 and '339 Patents.

39.    Upon information and belief, one or more of Spireas's Research Activities resulted, in whole or in part, in invention(s) that are the subject matter of additional U.S. and/or foreign patent applications and/or issued patents (the "Additional Patents").

7

40.     Upon information and belief, one or more of Bolton's Research Activities resulted, in whole or in part, in invention(s) that are the subject matter of the Additional Patents.

41.     Bolton and Spireas intentionally and fraudulently concealed from STJ (a) the fact that their research at STJ had resulted, in whole or in part, in one or more patentable and commercially viable inventions, and (b) information concerning the novelty, importance in the field, patentability, potential commercial value, and other pertinent characteristics, of such invention(s).

42.     As a result of the foregoing, Bolton and Spireas have each, *inter alia*, breached their respective agreements to assign to STJ any patentable inventions resulting from their research conducted or services rendered at STJ, breached their respective fiduciary duties to STJ, defrauded STJ, failed to account to STJ for revenues derived from the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents and/or the Additional Patents, and have been unjustly enriched at STJ's expense.

**Bolton's Assignment And Revenue Sharing Obligations**

43.     From in or about 1980 through June 1994, Bolton was a professor and faculty member of the STJ College of Pharmacy and Allied Health Professions.

44.     From in or about 1985 through 1991, Bolton was chair of the Department of Pharmacology and Administrative Sciences at STJ.

45.     Bolton accepted his position as faculty member at STJ subject to the terms and provisions of the STJ Patent Policy.

46.     Under the STJ Patent Policy, Bolton had a contractual obligation to assign to STJ all patentable inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from any of (a) Bolton's use of the laboratories or other facilities of STJ, (b) services rendered by Bolton to STJ, (c) research conducted under Bolton's direction by STJ graduate students and/or fellows, or (d) any related or predicate research conducted or directed by Bolton.

47.     On or about June 6, 1984, Bolton and STJ executed a written agreement confirming Bolton's obligations with respect to the ownership of inventions resulting from research and research related services performed by Bolton at STJ.  The agreement also contained a separate obligation for STJ, Bolton, and others, if necessary, to share revenues derived from such inventions (this written agreement, containing these two contractual agreements, shall be referred to herein as the "Bolton Research Agreement").

48.     Under the Bolton Research Agreement, Bolton had a contractual obligation to assign to STJ all patentable inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from Bolton's use of the laboratories or other facilities of STJ, from services rendered by Bolton to STJ, or from related or predicate research conducted or directed by Bolton.

49.     Under the Bolton Research Agreement, Bolton had a contractual obligation to account to STJ for all revenues received, by or on behalf of Bolton, in connection with any patentable inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from Bolton's use of the laboratories or other facilities of STJ, from services rendered by Bolton to STJ, or from related or predicate research conducted or directed by Bolton.

50.     Under the Bolton Research Agreement, Bolton had a contractual obligation to pay STJ 30% of all revenues received, by or on behalf of Bolton, or by or on behalf of any student whose research Bolton directed at STJ, in connection with any patentable inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from Bolton's use of the laboratories or other facilities of STJ, from services rendered by Bolton to STJ, or from related or predicate research conducted or directed by Bolton.

**Bolton's Contractual Duty to Disclose Potentially Patentable Inventions to STJ**

51.     The STJ Patent Policy required Bolton to assign to STJ all patentable inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from any of Bolton's Research Activities.

52.     Bolton had a superiority of knowledge as compared to STJ with respect to the results of Bolton's Research Activities.

53.     Absent a duty, on the part of Bolton, to disclose to STJ any potentially patentable inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from any of Bolton's Research Activities, STJ's right to receive the benefit of the STJ Patent Policy would be destroyed or significantly impaired.

54.     A reasonable person in the position of STJ would be justified in understanding that the STJ Patent Policy included a duty on the part of Bolton to disclose to STJ any potentially patentable inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from any of Bolton's Research Activities.

55.     Under the STJ Patent Policy, Bolton was obligated to disclose to STJ any potentially patentable inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from any of Bolton's Research Activities.

56.     The Bolton Research Agreement required Bolton to assign to STJ all patentable inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from Bolton's Research Activities.

57.     The services rendered by Bolton to STJ included directing research conducted by graduate students and doctoral candidates of the STJ College of Pharmacy and Allied Health Professions.

58.     Bolton had a superiority of knowledge as compared to STJ with respect to the results of Bolton's Research Activities.

59.     Absent a duty, on the part of Bolton, to disclose to STJ any potentially patentable inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from any of Bolton's Research Activities, STJ's right to receive the benefit of the Bolton Research Agreement would be destroyed or significantly impaired.

60.     A reasonable person in the position of STJ would be justified in understanding that the Bolton Research Agreement included a duty on the part of Bolton to disclose to STJ any potentially patentable inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from any of Bolton's Research Activities.

11

61.    Under the Bolton Research Agreement, Bolton had a duty to disclose to STJ any potentially patentable inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from any of Bolton's Research Activities.

**Bolton's Independent Fiduciary Duties to Disclose Information to STJ**

62.    Bolton had a superiority of knowledge as compared to STJ with respect to the novelty, importance in the field, patentability, potential commercial value, and other pertinent characteristics, of any inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from Bolton's Research Activities.

63.    Under the STJ Patent Policy, STJ was dependent upon Bolton to provide truthful and forthright information and advice regarding all aspects of the progress and results of Bolton's Research Activities.

64.    Under the STJ Patent Policy, STJ was dependent upon Bolton to provide truthful and forthright information and advice regarding the novelty, importance in the field, patentability, potential commercial value, and other pertinent characteristics, of any inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from Bolton's Research Activities.

65.    The STJ Patent Policy established a relationship of trust and confidence between the parties regarding Bolton's disclosure of full information and advice with respect to the novelty, importance in the field, patentability, potential commercial value, and other pertinent characteristics, of any invention resulting, in whole or in part, from Bolton's Research Activities.

66.     As a result of the trust confided in Bolton by STJ, and accepted by Bolton, under the STJ Patent Policy, Bolton had an independent fiduciary duty to disclose to STJ full information and advice concerning the novelty, importance in the field, patentability, potential commercial value, and other pertinent characteristics, of any inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from Bolton's Research Activities.

67.     Under the Bolton Research Agreement, STJ was dependent upon Bolton to provide truthful and forthright information and advice regarding all aspects of the progress and results of Bolton's Research Activities.

68.     Under the Bolton Research Agreement, STJ was dependent upon Bolton to provide truthful and forthright information and advice regarding the novelty, importance in the field, patentability, potential commercial value, and other pertinent characteristics, of any inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from Bolton's Research Activities.

69.     The Bolton Research Agreement established a relationship of trust and confidence between the parties regarding Bolton's disclosure of full information and advice with respect to the novelty, importance in the field, patentability, potential commercial value, and other pertinent characteristics, of any invention resulting, in whole or in part, from Bolton's Research Activities.

70.     As a result of the trust confided in Bolton by STJ, and accepted by Bolton, under the Bolton Research Agreement, Bolton had an independent fiduciary duty to disclose to STJ full information and advice concerning the novelty, importance in the field, patentability, potential commercial value, and other pertinent characteristics, of any inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from Bolton's Research Activities.

13

**Spireas's Assignment Obligations**

71.    Spireas accepted his position as a graduate teaching fellow at the STJ College of Pharmacy and Allied Health Professions subject to the terms and provisions of the STJ Patent Policy.

72.    Spireas accepted his position as a doctoral candidate at the STJ College of Pharmacy and Allied Health Professions subject to the terms and provisions of the STJ Patent Policy.

73.    Spireas accepted a position as a research/teaching fellow at the STJ College of Pharmacy and Allied Health Professions subject to the terms and provisions of the STJ Patent Policy.

74.    At all times from at or about the time Spireas began his graduate studies at STJ through the present, Spireas understood that he was bound by the STJ Patent Policy with respect to any of Spireas's Research Activities.

75.    Under the STJ Patent Policy, Spireas had a contractual obligation to assign to STJ all patentable inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from Spireas's Research Activities.

76.    On or about April 20, 1988, Spireas and STJ entered into a written agreement under which Spireas accepted a position as a paid Doctoral Fellow at STJ;  Then, on or about April 25, 1989, Spireas and STJ entered into another written agreement under which Spireas continued in his position as a paid Doctoral Fellow at STJ (collectively, the "Fellowship Agreements").

14

77.     Under the Fellowship Agreements, Spireas had a contractual obligation to assign to STJ all patentable inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from Spireas's Research Activities.

78.     In or about 1991, Bolton and Spireas requested permission for a portion of the Dissertation Research Project to be conducted off-campus at Ciba-Geigy Corporation ("Ciba-Geigy").

79.     Ciba-Geigy, in February 1991, at the request of Spireas and Bolton, confirmed that it had approved the use of its facilities for research by Spireas, and, at the request of Spireas and Bolton, confirmed that all publications, inventions, discoveries, processes, uses, products or combinations resulting in whole or in part from the Dissertation Research Project would be assigned by Spireas to STJ, and would be the sole property of STJ (the "Ciba-Geigy Letter").

80.     Upon information and belief, Spireas, along with Bolton, requested that Ciba-Geigy create the Ciba-Geigy Letter and submit it to STJ.

81.     Upon information and belief, Spireas, along with Bolton, provided Ciba-Geigy with model language outlining the STJ Patent Policy for inclusion in the Ciba-Geigy Letter.

82.     On or about March 6, 1991, Bolton submitted a memorandum to STJ requesting that STJ grant Spireas permission to conduct a portion of the Dissertation Research Project off-campus at Ciba-Geigy pursuant to the terms of the Ciba-Geigy letter (the "Off-Campus Request").

83.     The Off-Campus Request references the Ciba-Geigy Letter and its contents.

84.    Spireas was aware of the contents and terms of the Ciba-Geigy Letter and the Off-Campus Request.

85.    Spireas gave his prior consent and agreement to the contents and terms of the Ciba-Geigy Letter and the Off-Campus Request.

86.    On or about July 16, 1991, in response to the Off-Campus Request and the Ciba-Geigy Letter, STJ granted permission for Spireas to conduct a portion of the Dissertation Research Project off-campus at Ciba-Geigy.

87.    Spireas, by accepting permission to conduct a portion of the Dissertation Research Project off-campus at Ciba-Geigy, consented and agreed to the contents and terms of the Ciba-Geigy Letter and the Off-Campus Request.

88.    Spireas, by accepting permission to conduct a portion of the Dissertation Research Project off-campus at Ciba-Geigy, and through other means, consented and agreed that all publications, inventions, discoveries, processes, uses, products or combinations resulting, in whole or in part, from the Dissertation Research Project would be assigned by Spireas to STJ (the "Dissertation Project Agreement").

89.    Spireas had an obligation under the Dissertation Project Agreement to assign to STJ all publications, inventions, discoveries, processes, uses, products or combinations resulting, in whole or in part, from the Dissertation Research Project, or from related or predicate research conducted by Spireas.

**Spireas's Contractual Duty to Disclose Information to STJ**

90.    Spireas had a superiority of knowledge as compared to STJ with respect to the results of Spireas's Research Activities.

91.    Absent a duty, on the part of Spireas, to disclose to STJ any potentially patentable inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from any of Spireas's Research Activities, STJ's right to receive the benefit of the STJ Patent Policy would be destroyed or significantly impaired.

92.    A reasonable person in the position of STJ would be justified in understanding that the STJ Patent Policy included a duty on the part of Spireas to disclose to STJ any potentially patentable inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from any of Spireas's Research Activities.

93.    Under the STJ Patent Policy, Spireas had a duty to disclose to STJ any potentially patentable inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from any of Spireas's Research Activities.

94.    Absent a duty, on the part of Spireas, to disclose to STJ any potentially patentable inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from any of Spireas's Research Activities, STJ's right to receive the benefit of the Fellowship Agreements would be destroyed or significantly impaired.

95.    A reasonable person in the position of STJ would be justified in understanding that the Fellowship Agreements included a duty on the part of Spireas to disclose to STJ any

patentable inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from any of Spireas's Research Activities.

96. Under the Fellowship Agreements, Spireas had a duty to disclose to STJ any patentable inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from any of Spireas's Research Activities.

97. Absent a duty to disclose to STJ any potentially patentable inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from the Dissertation Research Project, STJ's right to receive the benefit of the Dissertation Project Agreement would be destroyed or significantly impaired.

98. A reasonable person in the position of STJ would be justified in understanding that the Dissertation Project Agreement included a duty on the part of Spireas to disclose to STJ any potentially patentable inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from the Dissertation Research Project, or from related or predicate research conducted by Spireas.

99. Under the Dissertation Project Agreement, Spireas had a duty to disclose to STJ any potentially patentable inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from the Dissertation Research Project, or from related or predicate research conducted by Spireas.

**Spireas's Independent Fiduciary Duty to Disclose Information to STJ**

100. Spireas had a superiority of knowledge as compared to STJ with respect to the novelty, importance in the field, patentability, potential commercial value, and other pertinent

characteristics, of any inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from Spireas's Research Activities.

101.    Under the STJ Patent Policy, STJ was dependent upon Spireas to provide truthful and forthright information with respect to all aspects of the progress and results of Spireas's Research Activities.

102.    Under the STJ Patent Policy, STJ was dependent upon Spireas to provide truthful and forthright information regarding the novelty, importance in the field, patentability, potential commercial value, and other pertinent characteristics, of any inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from Spireas's Research Activities.

103.    Spireas's acceptance of the STJ Patent Policy established a relationship of trust and confidence between the parties regarding Spireas's truthful and forthright disclosure of full information and advice concerning the novelty, importance in the field, patentability, potential commercial value, and other pertinent characteristics, of any inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from Spireas's Research Activities.

104.    As a result of the trust confided in Spireas by STJ, and accepted by Spireas, under the STJ Patent Policy, Spireas had an independent fiduciary duty to disclose to STJ full information and advice concerning the novelty, importance in the field, patentability, potential commercial value, and other pertinent characteristics, of any inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from Spireas's Research Activities.

105.    Under the Fellowship Agreements, STJ was dependent upon Spireas to provide truthful and forthright information with respect to all aspects of the progress and results of Spireas's Research Activities.

106.    Under the Fellowship Agreements, STJ was dependent upon Spireas to provide truthful and forthright information and advice regarding the novelty, importance in the field, patentability, potential commercial value, and other pertinent characteristics, of any inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from Spireas's Research Activities.

107.    The Fellowship Agreements established a relationship of trust and confidence between the parties regarding Spireas's truthful and forthright disclosure of full information and advice concerning the novelty, importance in the field, patentability, potential commercial value, and other pertinent characteristics, of any inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from Spireas's Research Activities.

108.    As a result of the trust confided in Spireas by STJ, and accepted by Spireas, under the Fellowship Agreements, Spireas had an independent fiduciary duty to disclose to STJ full information and advice concerning the novelty, importance in the field, patentability, potential commercial value, and other pertinent characteristics, of any inventions, discoveries, processes, uses, products, or combinations, resulting in whole or in part from Spireas's Research Activities.

109.    Spireas had a superiority of knowledge as compared to STJ with respect to the novelty, importance in the field, patentability, potential commercial value, and other pertinent characteristics, of any inventions, discoveries, processes, uses, products, or combinations,

resulting, in whole or in part, from the Dissertation Research Project, or from any related or predicate research conducted by Spireas.

110.    Under the Dissertation Project Agreement, STJ was dependent upon Spireas to provide truthful and forthright information with respect to all aspects of the progress and results of the Dissertation Research Project, or from related or predicate research conducted by Spireas.

111.    Under the Dissertation Project Agreement, STJ was dependent upon Spireas to provide truthful and forthright information and advice regarding the novelty, importance in the field, patentability, potential commercial value, and other pertinent characteristics, of any inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from the Dissertation Research Project, or from related or predicate research conducted by Spireas.

112.    The Dissertation Project Agreement established a relationship of trust and confidence between the parties regarding Spireas's forthright disclosure of full information and advice concerning the novelty, importance in the field, patentability, potential commercial value, and other pertinent characteristics, of any inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from the Dissertation Research Project, or from related or predicate research conducted by Spireas.

113.    As a result of the trust confided in Spireas by STJ, and accepted by Spireas, in connection with the Dissertation Project Agreement and related research, Spireas had an independent fiduciary duty to disclose to STJ full information and advice concerning the novelty, importance in the field, patentability, potential commercial value, and other pertinent characteristics, of any inventions, discoveries, processes, uses, products, or combinations,

21

resulting in whole or in part from the Dissertation Research Project, or from related or predicate research conducted by Spireas.

**The Failure On the Part of Bolton and Spireas to Disclose to STJ the Invention(s) and/or Their Patentability and Commercial Value**

114.    Spireas was aware, in or before February 1993, that one or more of Spireas's Research Activities, had resulted, in whole or in part, in one or more patentable inventions, discoveries, processes, uses, products, or combinations.

115.    Spireas did not at any time disclose to STJ that one or more of Spireas's Research Activities had resulted, in whole or in part, in a patentable invention, discovery, process, use, product, or combination.

116.    Spireas, with the intent to deceive STJ concerning its rights, did not disclose to STJ that one or more of Spireas's Research Activities had resulted, in whole or in part, in a patentable invention, discovery, process, use, product, or combination.

117.    Spireas did not at any time disclose to STJ information in his possession affirmatively indicating the novelty, importance in the field, patentability, potential commercial value, and other pertinent characteristics, of the invention(s) resulting from one or more of Spireas's Research Activities.

118.    Spireas, with the intent to deceive STJ concerning its rights, did not disclose to STJ information in his possession affirmatively indicating the novelty, importance in the field, patentability, potential commercial value, and other pertinent characteristics, of the invention(s) resulting from one or more of Spireas's Research Activities.

119.    Bolton was aware, in or before February 1993, that one or more of Bolton's Research Activities, had resulted, in whole or in part, in one or more patentable inventions, discoveries, processes, uses, products, or combinations.

120.    Bolton did not at any time disclose to STJ that one or more of Bolton's Research Activities, had resulted, in whole or in part, in a patentable invention, discovery, process, use, product, or combination.

121.    Bolton, with the intent to deceive STJ concerning its rights, did not disclose to STJ that one or more of Bolton's Research Activities, had resulted, in whole or in part, in a patentable invention, discovery, process, use, product, or combination.

122.    Bolton did not at any time disclose to STJ information or advice concerning the novelty, importance in the field, patentability, potential commercial value, or other pertinent characteristics, of the invention(s) resulting, in whole or in part, from one or more of Bolton's Research Activities.

123.    Bolton, with the intent to deceive STJ concerning its rights, did not disclose to STJ information or advice concerning the novelty, importance in the field, patentability, potential commercial value, or other pertinent characteristics, of the invention(s) resulting, in whole or in part, from one or more of Bolton's Research Activities.

**The Failure On the Part of Bolton and Spireas to Disclose to STJ the Invention(s) and/or Information Pertaining Thereto While Taking Steps to Secure Patent Protection**

124.    Bolton and Spireas were aware, on or about January 10, 1996, that the '514 Patent Application was filed with the USPTO.

125.    Spireas was aware, on or about January 10, 1996, that one or more of Spireas's Research Activities had resulted, in whole or in part, in the patentable invention(s) that are the subject matter of the '514 Patent Application and the '834 Patent.

126.    Spireas did not at any time disclose to STJ that one or more of Spireas's Research Activities had resulted, in whole or in part, in the patentable invention(s) that are the subject matter of the '514 Patent Application and the '834 Patent.

127.    Spireas, with the intent to deceive STJ concerning its rights, did not disclose to STJ that one or more of Spireas's Research Activities had resulted, in whole or in part, in the patentable invention(s) that are the subject matter of the '514 Patent Application and the '834 Patent.

128.    Spireas did not at any time disclose to STJ information in his possession affirmatively indicating the novelty, importance in the field, patentability, potential commercial value, or other pertinent characteristics, of the invention(s) that are the subject matter of the '514 Patent Application and the '834 Patent.

129.    Spireas, with the intent to deceive STJ concerning its rights, did not disclose to STJ information in his possession affirmatively indicating the novelty, importance in the field, patentability, potential commercial value, or other pertinent characteristics, of the invention(s) that are the subject matter of the '514 Patent Application and the '834 Patent.

130.    Spireas was aware, on or about the respective filing dates for the '240, '035 and '475 Patent Applications, that one or more of Spireas's Research Activities had resulted, in

whole or in part, in the patentable invention(s) that are the subject matter of the '240, '035 and '475 Patent Applications and the '550, '337 and '339 Patents.

131.    Spireas did not at any time disclose to STJ that one or more of Spireas's Research Activities had resulted, in whole or in part, in the patentable invention(s) that are the subject matter of the '240, '035 and '475 Patent Applications and the '550, '337 and '339 Patents.

132.    Spireas, with the intent to deceive STJ concerning its rights, did not disclose to STJ that one or more of Spireas's Research Activities had resulted, in whole or in part, in the patentable invention(s) that are the subject matter of the '240, '035 and '475 Patent Applications and the '550, '337 and '339 Patents.

133.    Spireas did not at any time disclose to STJ information in his possession affirmatively indicating the novelty, importance in the field, patentability, potential commercial value, and/or other pertinent characteristics, of the invention(s) that are the subject matter of the '240, '035 and '475 Patent Applications and the '550, '337 and '339 Patents.

134.    Spireas, with the intent to deceive STJ concerning its rights, did not disclose to STJ information in his possession affirmatively indicating the novelty, importance in the field, patentability, potential commercial value, and/or other pertinent characteristics, of the invention(s) that are the subject matter of the '240, '035 and '475 Patent Applications and the '550, '337 and '339 Patents.

135.    Upon information and belief, Spireas was aware, on or about the respective filing dates for the patent applications covering the Additional Patents, that one or more of Spireas's

Research Activities had resulted, in whole or in part, in the patentable invention(s) that are the subject matter of the Additional Patents.

136.    Upon information and belief, Spireas did not at any time disclose to STJ that one or more of Spireas's Research Activities had resulted, in whole or in part, in the patentable invention(s) that are the subject matter of the Additional Patents.

137.    Upon information and belief, Spireas, with the intent to deceive STJ concerning its rights, did not disclose to STJ that one or more of Spireas's Research Activities had resulted, in whole or in part, in the patentable invention(s) that are the subject matter of the Additional Patents.

138.    Upon information and belief, Spireas did not at any time disclose to STJ information in his possession affirmatively indicating the novelty, importance in the field, patentability, potential commercial value, and/or other pertinent characteristics, of the invention(s) that are the subject matter of the Additional Patents.

139.    Upon information and belief, Spireas, with the intent to deceive STJ concerning its rights, did not at any time disclose to STJ information in his possession affirmatively indicating the novelty, importance in the field, patentability, potential commercial value, and/or other pertinent characteristics, of the invention(s) that are the subject matter of the Additional Patents.

140.    Bolton was aware, on or about January 10, 1996, that one or more of Bolton's Research Activities had resulted, in whole or in part, in the patentable invention(s) that are the subject matter of the '514 Patent Application and the '834 Patent.

141.    Bolton did not at any time disclose to STJ that one or more of Bolton's Research Activities had resulted, in whole or in part, in the patentable invention(s) that are the subject matter of the '514 Patent Application and the '834 Patent.

142.    Bolton, with the intent to deceive STJ concerning its rights, did not disclose to STJ that one or more of Bolton's Research Activities had resulted, in whole or in part, in the patentable invention(s) that are the subject matter of the '514 Patent Application and the '834 Patent.

143.    Bolton did not at any time disclose to STJ information in his possession affirmatively indicating the novelty, importance in the field, patentability, potential commercial value, and/or other pertinent characteristics, of the invention(s) that are the subject matter of the '514 Patent Application and the '834 Patent.

144.    Bolton, with the intent to deceive STJ concerning its rights, did not disclose to STJ information in his possession affirmatively indicating the novelty, importance in the field, patentability, potential commercial value, and/or other pertinent characteristics, of the invention(s) that are the subject matter of the '514 Patent Application and the '834 Patent.

145.    Bolton was aware, on or about the respective filing dates for the '240, '035 and '475 Patent Applications, that one or more of Bolton's Research Activities had resulted, in whole or in part, in the patentable invention(s) that are the subject matter of the '240, '035 and '475 Patent Applications and the '550, '337 and '339 Patents.

146.    Bolton did not at any time disclose to STJ that one or more of Bolton's Research Activities had resulted, in whole or in part, in the patentable invention(s) that are the subject matter of the '240, '035 and '475 Patent Applications and the '550, '337 and '339 Patents.

147.    Bolton, with the intent to deceive STJ concerning its rights, did not disclose to STJ that one or more of Bolton's Research Activities had resulted, in whole or in part, in the patentable invention(s) that are the subject matter of the '240, '035 and '475 Patent Applications and the '550, '337 and '339 Patents.

148.    Bolton did not at any time disclose to STJ information in his possession affirmatively indicating the novelty, importance in the field, patentability, potential commercial value, and/or other pertinent characteristics, of the invention(s) that are the subject matter of the '240, '035 and '475 Patent Applications and the '550, '337 and '339 Patents.

149.    Bolton, with the intent to deceive STJ concerning its rights, did not disclose to STJ information in his possession affirmatively indicating the novelty, importance in the field, patentability, potential commercial value, and/or other pertinent characteristics, of the invention(s) that are the subject matter of the '240, '035 and '475 Patent Applications and the '550, '337 and '339 Patents.

150.    Upon information and belief, Bolton was aware, on or about the respective filing dates for the patent applications covering the Additional Patents, that one or more of Bolton's Research Activities had resulted, in whole or in part, in the patentable invention(s) that are the subject matter of the Additional Patents.

151.     Upon information and belief, Bolton did not at any time disclose to STJ that one or more of Bolton's Research Activities had resulted, in whole or in part, in the patentable invention(s) that are the subject matter of the Additional Patents.

152.     Upon information and belief, Bolton, with the intent to deceive STJ concerning its rights, did not disclose to STJ that one or more of Bolton's Research Activities had resulted, in whole or in part, in the patentable invention(s) that are the subject matter of the Additional Patents.

153.     Upon information and belief, Bolton did not at any time disclose to STJ information in his possession affirmatively indicating the novelty, importance in the field, patentability, potential commercial value, and/or other pertinent characteristics, of the invention(s) that are the subject matter of the Additional Patents.

154.     Upon information and belief, Bolton, with the intent to deceive STJ concerning its rights, did not at any time disclose to STJ information in his possession affirmatively indicating the novelty, importance in the field, patentability, potential commercial value, and/or other pertinent characteristics, of the invention(s) that are the subject matter of the Additional Patents.

**Further Activities of Defendants**

155.     Upon information and belief, in or about June of 1993, Bolton resigned his position at STJ with the goal, in whole or in part, to pursue patents for the invention(s) at issue, in a manner that would enable him to conceal from STJ the origin and existence of the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents.

156.     In or about January of 1997, after the filing of the '514 Patent Application, Bolton and Spireas formed Hygrosol.

157.     Upon information and belief, Bolton and Spireas assigned one or more of the '514, '240, '035 and/or '475 Patent Applications, the '834, '550, '337 and/or '339 Patents, and/or the Additional Patents, to Hygrosol.

158.     Upon information and belief, Hygrosol has entered into agreements to license one or more of '514, '240, '035 and/or '475 Patent Applications, the '834, '550, '337 and/or '339 Patents, and/or the Additional Patents, to Mutual Pharmaceutical/United Research Laboratories, Inc.

159.     Upon information and belief, Defendants have received a total of no less than one hundred million dollars ($100,000,000) through licensing the '514, '240, '035 and/or '475 Patent Applications, the '834, '550, '337 and/or '339 Patents, and/or the Additional Patents.

160.     Upon information and belief, the vast bulk of the licensing revenues was received by Defendants on or after January 1, 2006.

161.     Upon information and belief, at all times relevant to this action, Hygrosol has been controlled by Bolton and Spireas, and by no other person or entity.

162.     Upon information and belief, Hygrosol is the alter ego of Bolton and Spireas, and, at all times relevant to this action, Hygrosol's sole purpose and use has been to serve as a vehicle for receiving revenues from Mutual Pharmaceutical/United Research Laboratories, Inc., and funneling such revenues to Bolton and Spireas in a manner designed to aid Defendants' efforts to conceal their activities from STJ.

163. Defendants have not assigned to STJ the inventions, discoveries, processes, uses, products, or combinations that are the subject matter of the '514, '240, '035 or '475 Patent Applications, the '834, '550, '337 or '339 Patents, or the Additional Patents.

164. Defendants have not accounted to STJ for the revenues derived from the licensing of the inventions, discoveries, processes, uses, products, or combinations that are the subject matters of the '514, '240, '035 or '475 Patent Applications, the '834, '550, '337 or '339 Patents, or the Additional Patents.

165. Defendants have not paid to STJ any part of the revenues derived from the licensing of the inventions, discoveries, processes, uses, products, or combinations that are the subject matters of the '514, '240, '035 or '475 Patent Applications, the '834, '550, '337 or '339 Patents, or the Additional Patents.

**Defendants Fraudulently Concealed the Facts Giving Rise to STJ's Causes of Action**

166. Under the foregoing facts, Bolton had a contractual duty to disclose to STJ any potentially patentable inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from any of Bolton's Research Activities.

167. Under the foregoing facts, Bolton had an independent fiduciary duty to disclose to STJ full information and advice concerning the novelty, importance in the field, patentability, potential commercial value, and other pertinent characteristics, of any inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from any of Bolton's Research Activities.

168.   STJ reasonably relied upon Bolton's superior knowledge and expertise, and reasonably placed trust and confidence in Bolton, to its detriment.

169.   Bolton fraudulently concealed the facts giving rise to STJ's causes of action regarding the invention(s) at issue by failing to disclose to STJ that one or more of Bolton's Research Activities had resulted, in whole or in part, in a patentable invention, discovery, process, use, product, or combination.

170.   Bolton fraudulently concealed the facts giving rise to STJ's causes of action regarding the invention(s) at issue by failing to disclose to STJ information and advice concerning the novelty, importance in the field, patentability, potential commercial value, and/or other pertinent characteristics, of any inventions, discoveries, processes, uses, products, or combinations, resulting in whole or in part from one or more of Bolton's Research Activities.

171.   Under the foregoing facts, Spireas had a contractual duty to disclose to STJ any potentially patentable inventions discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from any of Spireas's Research Activities.

172.   Under the foregoing facts, Spireas had an independent fiduciary duty to disclose to STJ full information and advice concerning the novelty, importance in the field, patentability, potential commercial value, and other pertinent characteristics, of any inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from any of Spireas's Research Activities.

173.   STJ reasonably relied upon Spireas's superior knowledge and expertise, and reasonably placed trust and confidence in Spireas, to its detriment.

174.    Spireas fraudulently concealed the facts giving rise to STJ's causes of action regarding the invention(s) at issue by failing to disclose to STJ that one or more of Spireas's Research Activities had resulted, in whole or in part, in a patentable invention, discovery, process, use, product, or combination.

175.    Spireas fraudulently concealed the facts giving rise to STJ's causes of action regarding the invention(s) at issue by failing to disclose to STJ information or advice concerning the novelty, importance in the field, patentability, potential commercial value, and/or other pertinent characteristics, of any inventions, discoveries, processes, uses, products, or combinations, resulting in whole or in part from one or more of Spireas's Research Activities.

176.    STJ did not discover the existence of its claims against Defendants until in or about November 2008, when the facts giving rise to STJ's claims were disclosed to STJ by an individual made aware of such facts in an unrelated lawsuit against one or more of the Defendants.

177.    STJ could not, by reasonable diligence, have discovered the facts giving rise to its claims before being advised of same in November 2008.

## FIRST CAUSE OF ACTION

178.    STJ repeats and realleges the allegations set forth above as if fully set forth herein.

179.    Under the foregoing facts, Bolton had a fiduciary duty, separate from and independent of the terms established by the STJ Patent Policy and the Bolton Research Agreement, to disclose to STJ full information and advice concerning the novelty, importance in

the field, patentability, potential commercial value, and/or other pertinent characteristics, of any inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from any of Bolton's Research Activities.

180.    Bolton was aware, at or before February 1993, that one or more of Bolton's Research Activities had resulted, in whole or in part, in one or more patentable inventions, discoveries, processes, uses, products, or combinations.

181.    Bolton was aware, on or about January 10, 1996, that one or more of Bolton's Research Activities had resulted, in whole or in part, in the patentable invention(s) that are the subject matter of the '514 Patent Application and the '834 Patent.

182.    Bolton was aware, on or about the respective filing dates for the '240, '035 and '475 Patent Applications, that one or more of Bolton's Research Activities had resulted, in whole or in part, in the patentable invention(s) that are the subject matter of the '240, '035 and '475 Patent Applications and the '550, '337 and '339 Patents.

183.    Upon information and belief, Bolton was aware, on or about the respective filing dates for the patent applications covering the Additional Patents, that one or more of Bolton's Research Activities had resulted, in whole or in part, in the patentable invention(s) that are the subject matter of the Additional Patents.

184.    STJ reasonably relied upon Bolton to utilize his superior knowledge and expertise to disclose to STJ full information and advice concerning the novelty, importance in the field, patentability, potential commercial value, and/or other pertinent characteristics, of any

inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from any of Bolton's Research Activities.

185.    Bolton, with the intent to deceive STJ as to its rights to the invention(s) at issue, and with the intent to deceptively prevent STJ from acquiring ownership of the invention(s) at issue and revenues derived therefrom, did not disclose to STJ information or advice concerning the novelty, importance in the field, patentability, potential commercial value, and/or other pertinent characteristics, of the inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from any of Bolton's Research Activities.

186.    Bolton's intentional failure to disclose to STJ information or advice concerning the novelty, importance in the field, patentability, potential commercial value, and/or other pertinent characteristics, of the inventions, discoveries, processes, uses, products, or combinations, resulting in whole or in part from any of Bolton's Research Activities, has directly damaged STJ by preventing STJ from acquiring ownership of the invention(s) at issue and the revenue stream associated therewith.

187.    As a result of the fraud perpetrated by Bolton upon STJ, STJ has been denied ownership of the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and the Additional Patents, and has been damaged in an amount to be determined at trial, such amount being no less than $30,000.000.

## SECOND CAUSE OF ACTION

188.    STJ repeats and realleges the allegations set forth above as if fully set forth herein.

189.    Under the foregoing facts, Spireas had a fiduciary duty, separate from and independent of the terms established by the STJ Patent Policy, the Fellowship Agreements, and the Dissertation Project Agreement, to disclose to STJ full information and advice concerning the novelty, importance in the field, patentability, potential commercial value, and/or other pertinent characteristics, of any inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from any of Spireas's Research Activities.

190.    Spireas was aware, at or before February 1993, that one or more of Spireas's Research Activities had resulted, in whole or in part, in one or more patentable inventions, discoveries, processes, uses, products, or combinations.

191.    Spireas was aware, on or about January 10, 1996, that one or more of Spireas's Research Activities had resulted, in whole or in part, in the patentable invention(s) that are the subject matter of the '514 Patent Application and the '834 Patent.

192.    Spireas was aware, on or about the respective filing dates for the '240, '035 and '475 Patent Applications, that one or more of Spireas's Research Activities had resulted, in whole or in part, in the patentable invention(s) that are the subject matter of the '240, '035 and '475 Patent Applications and the '550, '337 and '339 Patents.

193.    Upon information and belief, Spireas was aware, on or about the respective filing dates for the patent applications covering the Additional Patents, that one or more of Spireas's

36

Research Activities had resulted, in whole or in part, in the patentable invention(s) that are the subject matter of the Additional Patents.

194.     STJ reasonably relied upon Spireas to utilize his superior knowledge and expertise to disclose to STJ full information and advice concerning the novelty, importance in the field, patentability, potential commercial value, and/or other pertinent characteristics, of the inventions, discoveries, processes, uses, products, or combinations, resulting in whole or in part from any of Spireas's Research Activities.

195.     Spireas, with the intent to deceive STJ as to its rights to the invention(s) at issue, and with the intent to deceptively prevent STJ from acquiring ownership of the invention(s) at issue and revenue stream associated therewith, did not disclose to STJ information or advice concerning the novelty, importance in the field, patentability, potential commercial value, and/or other pertinent characteristics, of the inventions, discoveries, processes, uses, products, or combinations, resulting in whole or in part from any of Spireas's Research Activities.

196.     Spireas's failure to disclose to STJ information or advice concerning the novelty, importance in the field, patentability, potential commercial value, and/or other pertinent characteristics, of the inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from any of Spireas's Research Activities, has directly damaged STJ by preventing STJ from acquiring ownership of the invention(s) at issue and the revenue stream associated therewith.

197.     As a result of the fraud perpetrated by Spireas upon STJ, STJ has been denied ownership of the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents,

and the Additional Patents, and has been damaged in an amount to be determined at trial, such amount being no less than $30,000.000.

## THIRD CAUSE OF ACTION

198.    STJ repeats and realleges the allegations set forth above as if fully set forth herein.

199.    The STJ Patent Policy and the Bolton Research Agreement created valid contractual obligations between Bolton and STJ.

200.    Bolton and STJ entered into a valid contractual relationship under which Bolton is obligated to assign the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents to STJ.

201.    Under the STJ Patent Policy, Bolton is contractually obligated to assign the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents to STJ.

202.    Under the Bolton Research Agreement, Bolton is contractually obligated to assign the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents to STJ.

203.    STJ has performed all of its obligations under the STJ Patent Policy and the Bolton Research Agreement.

204.    Bolton has materially breached his obligation under the STJ Patent Policy by failing to assign to STJ the invention(s) that are the subject matter of the '834, '550, '337 and/or '339 Patents.

205.    Upon information and belief, Bolton has materially breached his obligation under the STJ Patent Policy by failing to assign to STJ the invention(s) that are the subject matter of the Additional Patents.

206.    Bolton has materially breached his obligation under the Bolton Research Agreement by failing to assign to STJ the invention(s) that are the subject matter of the '834, '550, '337 and/or '339 Patents.

207.    Upon information and belief, Bolton has materially breached his obligation under the Bolton Research Agreement by failing to assign to STJ the invention(s) that are the subject matter of the Additional Patents.

208.    Bolton, by virtue of his ownership interest in Hygrosol, is capable of fulfilling his obligation, under the STJ Patent Policy and/or the Bolton Research Agreement, to assign the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and the Additional Patents, to STJ.

209.    STJ has no adequate remedy at law with respect to Bolton's obligation to assign the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and the Additional Patents, to STJ.

210.    STJ will be irreparably harmed absent specific performance.

## FOURTH CAUSE OF ACTION

211.    STJ repeats and realleges the allegations set forth above as if fully set forth herein.

212.    The STJ Patent Policy, the Fellowship Agreements, and the Dissertation Project Agreement created valid contractual obligations between Spireas and STJ.

213.    Spireas and STJ entered into a valid contractual relationship under which Spireas is obligated to assign the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents to STJ.

214.    STJ has performed all of its obligations to Spireas under the STJ Patent Policy, the Fellowship Agreements, and the Dissertation Project Agreement.

215.    Spireas has materially breached his obligations under the STJ Patent Policy by failing to assign to STJ the invention(s) that are the subject matter of the '834, '550, '337 and/or '339 Patents.

216.    Upon information and belief, Spireas has materially breached his obligations under the STJ Patent Policy by failing to assign to STJ the invention(s) that are the subject matter of the Additional Patents.

217.    Spireas has materially breached his obligations under the Fellowship Agreements by failing to assign to STJ the invention(s) that are the subject matter of the '834, '550, '337 and/or '339 Patents.

218.   Upon information and belief, Spireas has materially breached his obligations under the Fellowship Agreements by failing to assign to STJ the invention(s) that are the subject matter of the Additional Patents.

219.   Spireas has materially breached his obligations under the Dissertation Project Agreement by failing to assign to STJ the invention(s) that are the subject matter of the '834, '550, '337 and/or '339 Patents.

220.   Upon information and belief, Spireas has materially breached his obligations under the Dissertation Project Agreement by failing to assign to STJ the invention(s) that are the subject matter of the Additional Patents.

221.   Spireas, by virtue of his ownership interest in Hygrosol, is capable of fulfilling his obligation, under the STJ Patent Policy, the Fellowship Agreements, and/or the Dissertation Project Agreement, to assign the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and the Additional Patents, to STJ.

222.   STJ has no adequate remedy at law with respect to Spireas's obligation to assign the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and the Additional Patents, to STJ.

223.   STJ will be irreparably harmed absent specific performance.

## FIFTH CAUSE OF ACTION

224.    STJ repeats and realleges the allegations set forth above as if fully set forth herein.

225.    The STJ Patent Policy and the Bolton Research Agreement created valid contractual obligations between Bolton and STJ.

226.    STJ has performed all of its obligations under the STJ Patent Policy and the Bolton Research Agreement.

227.    Under the STJ Patent Policy, Bolton is contractually obligated to assign the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and the Additional Patents, to STJ.

228.    Under the Bolton Research Agreement, Bolton is contractually obligated to assign the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and the Additional Patents, to STJ.

229.    Under the Bolton Research Agreement, Bolton is contractually obligated to account to STJ for, and to pay STJ 30% of, any revenues derived from the sale or licensing of the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents.

230.    Bolton has materially breached the STJ Patent Policy by failing to assign to STJ the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents.

231.    Bolton has materially breached the Bolton Research Agreement by failing to assign to STJ the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents.

232.    Bolton has materially breached the STJ Patent Policy by failing to account to STJ for revenues derived from the sale or licensing of the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents, and by failing to pay to STJ any portion of such revenues.

233.    Bolton has materially breached the Bolton Research Agreement by failing to account to STJ for revenues derived from the sale or licensing of the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents, and by failing to pay to STJ any portion of such revenues.

234.    As a result of Bolton's breaches of contract, STJ has been damaged in an amount to be determined at trial, such amount being no less than $30,000,000.

## SIXTH CAUSE OF ACTION

235.    STJ repeats and realleges the allegations set forth above as if fully set forth herein.

236.    Under the STJ Patent Policy, the Fellowship Agreements, and the Dissertation Project Agreement created valid contractual obligations between Spireas and STJ.

237.    STJ has performed all of its obligations under the STJ Patent Policy, the Fellowship Agreements, and the Dissertation Project Agreement.

238.    Spireas has materially breached the terms of the STJ Patent Policy by failing to assign to STJ the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents.

239.    Spireas has materially breached Fellowship Agreements by failing to assign to STJ the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents.

240.    Spireas has materially breached Dissertation Project Agreement by failing to assign to STJ the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents.

241.    Spireas has materially breached the terms of the STJ Patent Policy by failing to account to STJ for revenues derived from the sale or licensing of the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents, and by failing to pay to STJ any portion of such revenues.

242.    Spireas has materially breached Fellowship Agreements by failing to account to STJ for revenues derived from the sale or licensing of the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents, and by failing to pay to STJ any portion of such revenues.

243.    Spireas has materially breached Dissertation Project Agreement by failing to account to STJ for revenues derived from the sale or licensing of the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents, and by failing to pay to STJ any portion of such revenues.

244.     As a result of Spireas's breaches of contract, STJ has been damaged in an amount to be determined at trial, such amount being no less than $30,000,000.

## SEVENTH CAUSE OF ACTION

245.     STJ repeats and realleges the allegations set forth above as if fully set forth herein.

246.     STJ has performed all of its obligations under the Bolton Research Agreement.

247.     Under the Bolton Research Agreement, Bolton has a continuing obligation to account to STJ for all revenues derived from the sale or licensing of the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents, and to pay STJ 30% of any and all such revenues.

248.     Upon information and belief, Defendants' licensing of the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents have generated over $100,000,000 in revenues.

249.     Bolton has materially breached the Bolton Research Agreement, in each year since the issuance of '834 Patent, by failing to account to STJ for revenues derived from the licensing of the '834, '550, '337 and '339 Patents, and/or the Additional Patents, during each such year, and by failing to pay STJ 30% of revenues derived from the licensing of the '834, '550, '337 and '339 Patents, and/or the Additional Patents, during each such year.

250.     As a result of Bolton's multiple breaches of contract, STJ has been damaged in an amount to be determined at trial, such amount being no less than $30,000,000, in the aggregate.

## EIGHTH CAUSE OF ACTION

251.    STJ repeats and realleges the allegations set forth above as if fully set forth
herein.

252.    Under the foregoing facts, Bolton had a fiduciary duty, separate from and
independent of the terms established by the STJ Patent Policy and/or the Bolton Research
Agreement, to disclose to STJ full information and advice concerning the novelty, importance in
the field, patentability, potential commercial value, and/or other pertinent characteristics, of any
inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part,
from any of Bolton's Research Activities.

253.    Bolton breached his fiduciary duty to STJ by failing to disclose information or
advice concerning the novelty, importance in the field, patentability, potential commercial value,
and/or other pertinent characteristics, of any inventions, discoveries, processes, uses, products, or
combinations, resulting, in whole or in part, from any of Bolton's Research Activities.

254.    Bolton breached his fiduciary duties to STJ by failing to disclose to STJ that one
or more of Bolton's Research Activities had resulted, in whole or in part, in a patentable
invention, discovery, process, use, product, or combination.

255.    Bolton breached his fiduciary duties to STJ by failing to disclose to STJ that one
or more of Bolton's Research Activities had resulted, in whole or in part, in the patentable
invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the
Additional Patents.

256.    Bolton had a fiduciary duty to STJ to account to STJ for revenues derived from the licensing of the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents.

257.    Bolton breached his fiduciary duties to STJ by failing to account to STJ for revenues derived from the licensing of the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents.

258.    Bolton breached his fiduciary duties to STJ by failing to pay STJ 30% of revenues derived from the licensing of the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents.

259.    As a result of Bolton's breach of his fiduciary duties to STJ, STJ has been denied ownership of the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents, and has been damaged in an amount to be determined at trial, such amount being no less than $30,000.000.

## NINTH CAUSE OF ACTION

260.    STJ repeats and realleges the allegations set forth above as if fully set forth herein.

261.    Upon information and belief, Spireas was aware, from 1988 through the present, of Bolton's fiduciary duties to STJ, as such duties are set forth above.

262.    Bolton, in the manner and by the actions set forth above, breached his fiduciary duties to STJ ("Bolton's Breach").

263.    Upon information and belief, Spireas had actual knowledge of Bolton's Breach as early as in or about February of 1993.

264.    Upon information and belief, Spireas had actual knowledge of Bolton's Breach beginning as early as January of 1996 and continuing throughout the time period within which Bolton and Spireas made efforts to secure patent protection for the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents.

265.    Upon information and belief, Spireas knowingly participated in and gave substantial assistance to Bolton's Breach by engaging in joint efforts with Bolton to secure patent protection for the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents.

266.    Upon information and belief, Spireas knowingly participated in and gave substantial assistance to Bolton's Breach by joining Bolton in forming Hygrosol for the sole purpose of creating a vehicle to receive revenues derived from the '834, '550, '337 and '339 Patents, and/or the Additional Patents, and funneling such revenues to Bolton and Spireas.

267.    As a result of Spireas's aiding and abetting in Bolton's breach of his fiduciary duties to STJ, STJ has been denied ownership of the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents, and has been damaged in an amount to be determined at trial, such amount being no less than $30,000.000.

## TENTH CAUSE OF ACTION

268.     STJ repeats and realleges the allegations set forth above as if fully set forth herein.

269.     Under the foregoing facts, Spireas had a fiduciary duty, separate from and independent of the terms established by the STJ Patent Policy, the Fellowship Agreements, and/or the Dissertation Project Agreement, to disclose to STJ full information and advice concerning any patentable inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from any of Spireas's Research Activities.

270.     Spireas breached his fiduciary duty to STJ by failing to disclose information or advice concerning the novelty, importance in the field, patentability, potential commercial value, and/or other pertinent characteristics, of any inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from any of Spireas's Research Activities.

271.     Spireas breached his fiduciary duties to STJ by failing to disclose to STJ that one or more of Spireas's Research Activities had resulted, in whole or in part, in a patentable invention, discovery, process, use, product, or combination.

272.     Spireas breached his fiduciary duties to STJ by failing to disclose to STJ that one or more of Spireas's Research Activities had resulted, in whole or in part, in the patentable invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents.

273.   Spireas had a fiduciary duty to STJ to account to STJ for revenues derived from the licensing of the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents.

274.   Spireas breached his fiduciary duties to STJ by failing to account to STJ for revenues derived from the licensing of the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents, or to pay to STJ any revenues derived therefrom.

275.   As a result of Spireas's breach of his fiduciary duties to STJ, STJ has been denied ownership of the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents, and has been damaged in an amount to be determined at trial, such amount being no less than $30,000.000.

## ELEVENTH CAUSE OF ACTION

276.   STJ repeats and realleges the allegations set forth above as if fully set forth herein.

277.   Bolton and STJ had a valid and enforceable contract under which Bolton was required to assign to STJ the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents.

278.   Bolton and STJ had a valid and enforceable contract under which Bolton was required to share with STJ any revenues derived from the sale or licensing of the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents.

279.    Upon information and belief, Spireas was aware of the contracts between Bolton and STJ.

280.    Upon information and belief, Spireas intentionally induced Bolton to breach the contracts between Bolton and STJ by offering and/or agreeing to conceal from STJ information concerning the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents.

281.    Upon information and belief, Spireas intentionally induced Bolton to breach the contract between Bolton and STJ by offering and/or agreeing to be a party to the activities surrounding Hygrosol and the patents at issue, as described above.

282.    As a result of Spireas's tortious interference with the contractual relations between Bolton and STJ, STJ has been denied ownership of the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents, and has been damaged in an amount to be determined at trial, such amount being no less than $30,000.000.

## TWELFTH CAUSE OF ACTION

283.    STJ repeats and realleges the allegations set forth above as if fully set forth herein.

284.    Bolton's failure to disclose to STJ that one or more of Bolton's Research Activities had resulted, in whole or in part, in a patentable invention, discovery, process, use, product, or combination, has directly damaged STJ by preventing STJ from acquiring ownership of the invention(s) at issue and the revenue stream associated therewith.

285.    Spireas's failure to disclose to STJ that one or more of Spireas's Research
Activities had resulted, in whole or in part, in a patentable invention, discovery, process, use,
product, or combination, has directly damaged STJ by preventing STJ from acquiring ownership
of the invention(s) at issue and the revenue stream associated therewith.

286.    Bolton and Spireas patented the invention(s) that are the subject matter of the
'834, '550, '337 and '339 Patents, and failed to assign such patents to STJ.

287.    Upon information and belief, Bolton and/or Spireas patented the invention(s) that
are the subject matter of the Additional Patents, and failed to assign such patents to STJ.

288.    In or about January of 1997, Bolton and Spireas formed Hygrosol and
subsequently transferred the '834, '550, '337 and '339 Patents to Hygrosol.

289.    Upon information and belief, Bolton and/or Spireas transferred the Additional
Patents to Hygrosol.

290.    Upon information and belief, Defendants have received a total of over one
hundred million dollars ($100,000,000) through licensing the '834, '550, '337 and '339 Patents,
and/or the Additional Patents.

291.    Defendants have not assigned to STJ the inventions, discoveries, processes, uses,
products, or combinations that are the subject matters of the '834, '550, '337 and '339 Patents,
and/or the Additional Patents.

292.    Defendants have not accounted to STJ for the revenues derived from the licensing
of the '834, '550, '337 and '339 Patents, and/or the Additional Patents.

293.    Defendants have not paid to STJ any part of the revenues derived from the licensing of the '834, '550, '337 and '339 Patents, and/or the Additional Patents.

294.    As a result of the foregoing, Defendants have been unjustly enriched at the expense of STJ.

## THIRTEENTH CAUSE OF ACTION

295.    STJ repeats and realleges the allegations set forth above as if fully set forth herein.

296.    STJ is the legal owner of the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents.

297.    Upon information and belief, STJ is the legal owner of the invention(s) that are the subject matter of the Additional Patents.

298.    STJ has an immediate superior right of possession to the '834, '550, '337 and '339 Patents.

299.    Upon information and belief, STJ has an immediate superior right of possession to the Additional Patents.

300.    In or about November of 2008, STJ demanded that Defendants assign the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents to STJ.

301.    In or about November of 2008, Defendants refused to assign the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents to STJ.

302.    Defendants have exercised, and are continuing to exercise, an unauthorized dominion over the '834, '550, '337 and '339 Patents, to the exclusion of the STJ's rights.

303.    Upon information and belief, Defendants have exercised, and are continuing to exercise, an unauthorized dominion over the Additional Patents, to the exclusion of the STJ's rights.

304.    Defendants have converted to their own use and advantage, the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, to the exclusion of STJ's rights.

305.    Upon information and belief, Defendants have converted to their own use and advantage, the invention(s) that are the subject matter of the Additional Patents, to the exclusion of STJ's rights.

## FOURTEENTH CAUSE OF ACTION

306.    STJ repeats and realleges the allegations set forth above as if fully set forth herein.

307.    Upon information and belief, Bolton has transferred any purported ownership interest in the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents, to Hygrosol.

308.    Upon information and belief, Spireas has transferred any purported ownership interest in the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents, to Hygrosol.

309.   Upon information and belief, Defendants, through Hygrosol, have received a total of over one hundred million dollars ($100,000,000) from the licensing of the '834, '550, '337 and '339 Patents, and/or the Additional Patents.

310.   Upon information and belief, a request by STJ for an accounting of Defendants would be futile.

311.   Accordingly, STJ is entitled to an Order for an accounting for the funds and assets of Defendants, including access to all books and records of Defendants from the date of the filing of the '514 Patent Application through the present date.

## FIFTEENTH CAUSE OF ACTION

312.   STJ repeats and realleges the allegations set forth above as if fully set forth herein.

313.   Upon information and belief, at all times relevant to this action, Bolton and Spireas were the only shareholders of Hygrosol.

314.   Upon information and belief, Bolton and Spireas assigned the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents, to Hygrosol, with the knowledge that they each had an obligation to assign the same to STJ (the "Hygrosol Assignments").

315.   Upon information and belief, the Hygrosol Assignments were made by Bolton and Spireas with the actual intent to hinder, delay, or defraud STJ as a creditor with an ownership interest in the same.

316.    Upon information and belief, Bolton and Spireas did not receive fair consideration for any of the Hygrosol Assignments.

317.    The Hygrosol Assignments were a fraudulent conveyance as to STJ under the New York Debtor and Creditor Law, including, without limitation, § 276 of that law.

318.    As a result of the Hygrosol Assignments, STJ has been denied ownership of the invention(s) that are the subject matter of the '834, '550, '337 and '339 Patents, and/or the Additional Patents, and has been damaged in an amount to be determined at trial, such amount being no less than $30,000.000.

WHEREFORE, with claims seeking duplicative relief pleaded in the alternative, Plaintiff demands judgment as follows:

a.    On the First Cause of Action, a judgment in favor of STJ, including:

i.    Permanent injunctive relief in the form of an Order requiring Defendants to assign the '834, '550, '337 and '339 Patents (or any interest in said patents found to be assignable) to STJ;

ii.    Permanent injunctive relief in the form of an Order requiring Defendants to assign the Additional Patents (or any interest in said patents found to be assignable) to STJ;

iii.    Damages in an amount to be determined at trial, such amount being no less than $30,000,000; and

iv.    Punitive damages in an amount to be determined at trial, such amount being no less than $30,000,000.

      b.      On the Second Cause of Action, a judgment in favor of STJ, including:

      i.      Permanent injunctive relief in the form of an Order requiring Defendants to assign the '834, '550, '337 and '339 Patents (or any interest in said patents found to be assignable) to STJ;

      ii.      Permanent injunctive relief in the form of an Order requiring Defendants to assign the Additional Patents (or any interest in said patents found to be assignable) to STJ;

      iii.      Damages in an amount to be determined at trial, such amount being no less than $30,000,000; and

      iv.      Punitive damages in an amount to be determined at trial, such amount being no less than $30,000,000.

      c.      On the Third Cause of Action, a judgment in favor of STJ, including:

      i.      An Order of specific performance requiring Defendants to assign the '834, '550, '337 and '339 Patents (or any interest in said patents found to be assignable) to STJ; and

      ii.      An Order of specific performance requiring Defendants to assign the Additional Patents (or any interest in said patents found to be assignable) to STJ.

      d.      On the Fourth Cause of Action, a judgment in favor of STJ, including:

      i.      An Order of specific performance requiring Defendants to assign the '834, '550, '337 and '339 Patents (or any interest in said patents found to be assignable) to STJ; and

        ii.      An Order of specific performance requiring Defendants to assign the Additional Patents (or any interest in said patents found to be assignable) to STJ.

        e.      On the Fifth Cause of Action, a judgment in favor of STJ, including:

        i.      Damages in an amount to be determined at trial, such amount being no less than $30,000,000.

        f.      On the Sixth Cause of Action, a judgment in favor of STJ, including:

        i.      Damages in an amount to be determined at trial, such amount being no less than $30,000,000.

        g.      On the Seventh Cause of Action, a judgment in favor of STJ, including:

        i.      Damages in an amount to be determined at trial, such amount being no less than $30,000,000.

        h.      On the Eighth Cause of Action, a judgment in favor of STJ, including:

        i.      Permanent injunctive relief in the form of an Order requiring Defendants to assign the '834, '550, '337 and '339 Patents (or any interest in said patents found to be assignable) to STJ;

        ii.      Permanent injunctive relief in the form of an Order requiring Defendants to assign the Additional Patents (or any interest in said patents found to be assignable) to STJ; and

        iii.      Damages in an amount to be determined at trial, such amount being no less than $30,000,000.

        i.      On the Ninth Cause of Action, a judgment in favor of STJ, including:

i.      Permanent injunctive relief in the form of an Order requiring Defendants to assign the '834, '550, '337 and '339 Patents (or any interest in said patents found to be assignable) to STJ;

ii.      Permanent injunctive relief in the form of an Order requiring Defendants to assign the Additional Patents (or any interest in said patents found to be assignable) to STJ; and

iii.      Damages in an amount to be determined at trial, such amount being no less than $30,000,000.

j.      On the Tenth Cause of Action, a judgment in favor of STJ, including:

i.      Permanent injunctive relief in the form of an Order requiring Defendants to assign the '834, '550, '337 and '339 Patents (or any interest in said patents found to be assignable) to STJ;

ii.      Permanent injunctive relief in the form of an Order requiring Defendants to assign the Additional Patents (or any interest in said patents found to be assignable) to STJ; and

iii.      Damages in an amount to be determined at trial, such amount being no less than $30,000,000.

k.      On the Eleventh Cause of Action, a judgment in favor of STJ, including:

i.      Damages in an amount to be determined at trial, such amount being no less than $30,000,000.

l.      On the Twelfth Cause of Action, a judgment in favor of STJ, including:

      i.      Permanent injunctive relief in the form of an Order requiring Defendants to assign the '834, '550, '337 and '339 Patents (or any interest in said patents found to be assignable) to STJ;

      ii.     Permanent injunctive relief in the form of an Order requiring Defendants to assign the Additional Patents (or any interest in said patents found to be assignable) to STJ; and

      iii.    Damages in an amount to be determined at trial, such amount being no less than $30,000,000.

    m.     On the Thirteenth Cause of Action, a judgment in favor of STJ, including:

      i.      Permanent injunctive relief in the form of an Order requiring Defendants to assign the '834, '550, '337 and '339 Patents (or any interest in said patents found to be assignable) to STJ; and

      ii.     Permanent injunctive relief in the form of an Order requiring Defendants to assign the Additional Patents (or any interest in said patents found to be assignable) to STJ; and

      iii.    Damages in an amount to be determined at trial, such amount being no less than $30,000,000.

    n.     On the Fourteenth Cause of Action, a judgment in favor of STJ, including an accounting of the funds and assets of Defendants, including access to all books and records of Defendants from the date of the filing of the '514 Patent Application to the present date;

    o.     On the Fifteenth Cause of Action, a judgment in favor of STJ, including:

       i.      Permanent injunctive relief in the form of an Order requiring Defendants to assign the '834, '550, '337 and '339 Patents (or any interest in said patents found to be assignable) to STJ;

       ii.      Permanent injunctive relief in the form of an Order requiring Defendants to assign the Additional Patents (or any interest in said patents found to be assignable) to STJ; and

       iii.      Damages in an amount to be determined at trial, such amount being no less than $30,000,000; and

       p.      On all causes of action, awarding STJ its reasonable the costs and disbursements of this action, including interest and reasonable attorneys' fees.

## JURY DEMAND

STJ demands a trial by jury on all issues triable by a jury.

Dated: Great Neck, New York
      March 4, 2009

                        GARFUNKEL, WILD & TRAVIS, P.C.
                        *Attorneys for Plaintiffs*

By: _____
                        Michael Keane (MK-7655)
                        John Becker (JB-1093)
                        Jason Hsi (JH-2968)
            111 Great Neck Road
            Great Neck, New York  11021
            (516) 393-2200